```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
                                                                         :
BETTY POSNER,                                                            :
                                                                         :
                              Plaintiff,                                 :
                                                                         :        11 Civ. 4859 (JMF)
                 -v-                                                     :
                                                                         :        OPINION AND ORDER
CITY OF NEW YORK et al.,                                                 :
                                                                         :
                              Defendants.                                :
                                                                         :
------------------------------------------------------------------------ X
```

JESSE M. FURMAN, United States District Judge:

Plaintiff Betty Posner brings this action, pursuant to Title 42, United States Code, Section 1983, against the City of New York (the "City") and various members of the New York City Police Department (the "NYPD" and, together with the City, "Defendants") alleging violations of her constitutional rights.  In particular, Plaintiff brings claims for false arrest, malicious prosecution, malicious abuse of process, and failure to intervene, as well as a claim against the City for municipal liability.  Defendants move, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, for summary judgment on all of Plaintiff's claims.  For the reasons stated below, Defendants' motion is GRANTED, and the Complaint is dismissed.

## BACKGROUND

The following facts, taken from the Complaint and the admissible materials submitted by the parties, are viewed in the light most favorable to Plaintiff, as she is the non-moving party.  *See, e.g.*, *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 157-58 (2d Cir. 2012).

A.     **The Investigation**

On July 15, 2007, the NYPD began investigating the Hot Lap Dance Club ("HLDC"), a night club on the fifth floor of a building located in midtown Manhattan, based on complaints regarding, among other things, prostitution and narcotics sales. (Pollack Decl. (Docket No. 41), Ex. A at 2; Pollack Decl., Ex. B at 1; Passeser Decl. (Docket No. 52), Ex. O). The investigative team ultimately determined that HLDC operated as an unlicensed all-nude strip club and was the site of narcotics sales and prostitution. (Pollack Decl., Ex. B at 1). Specifically, in the course of the investigation, undercover police officers, while visiting HLDC, were sold narcotics nine times and made several positive agreements for prostitution with HLDC dancers. (*Id.*).

More relevant for present purposes, during the course of their investigation of HLDC, investigators examined various business records. Among other things, they found that HLDC's Internet domain name was registered to a corporate entity called "Web Access, Inc," which had been dissolved for failure to pay franchise taxes on June 27, 2001. (Pollack Decl., Ex. H at 9). Investigators discovered that, in or about January 2004, Web Access had applied for and obtained a contract to accept credit card charges in payment for services as an existing corporate entity, even though it was not one at the time. (*Id.*). In or about September 2005, Web Access also opened a bank account in its name at what is now Sovereign Bank, listing Plaintiff as its Owner and President and Louis Posner as its Vice President. (*Id.* at 10). Plaintiff signed papers submitted to the bank that did not mention that the corporation had been dissolved. (*Id.*).

The investigation also revealed that the credit card application submitted by Web Access stated that the company was doing business as "Voter March," selling "T shirts, tapes, books and event admissions" through the website "votermarch.com." (*Id.* at 9). Investigators learned that Voter March itself had been incorporated as a not-for-profit corporation on February 4, 2002,

and that Louis Posner was listed as its agent for service of process. (*Id.* at 10). In February 2007, Voter March opened its own corporate bank account at Commerce Bank; a document submitted to the bank (labeled a "Corporate Banking Resolution (For Deposit Account)") listed Louis Posner as President and Plaintiff as Secretary. (*Id.*). The document, which was signed by both Plaintiff and Louis Posner, falsely listed Voter March as a "for profit" corporation. (*Id.*). According to Plaintiff, the document was prepared by a bank representative. (Posner Aff. (Docket No. 46) ¶ 74). In addition, she alleges that Voter March's certificate of incorporation — identifying it as a non-profit corporation — was attached to the document. (Posner Aff. ¶ 75 & Exs. H-I).

Finally, to the extent relevant here, the investigators learned that, on December 12, 2007, "HLD Entertainment Corp." — which was not an actual corporation — applied for and obtained a contract to process credit card companies with First Data Corporation. (Pollack Decl., Ex. H at 12). The application, which listed Plaintiff as the company's contact person, stated falsely that the company had been legally incorporated, that it had been in business for one year, and that its business was "miscellaneous food stores." (*Id.*). On March 3, 2008, HLD Entertainment Corp. also opened a corporate checking account with Sovereign Bank, listing Plaintiff as President and Louis Posner as Vice President and stating that the nature of its business was "catering." (Pollack Decl., Ex. C). Checks from that bank account were used to pay the rent for HLDC's loft space and were written to persons working at HLDC who were involved in prostitution agreements with undercover officers. (Pollack Decl., Ex. H at 11). Additionally, credit card receivables were deposited into Plaintiff's personal account and then moved to HLD Entertainment' Corp's Sovereign Bank checking accounts. (*Id.* at 12).

3

During the investigation, an analyst for the New York County District Attorney's Office ("the D.A.'s Office") specializing in investigating prostitution businesses and money laundering schemes examined the records of thirteen bank accounts in the control of Plaintiff, Louis Posner, and the entities described above. (*Id.* at 13). Among other things, the analyst concluded that, dating back to April 2007, Plaintiff and Louis Posner had made unexplained transfers in excess of $260,000.00. (*Id.*). Further, he uncovered a pattern that, in his judgment, revealed intent to structure transfers to avoid federal currency transaction reporting laws. (Pollack Decl., Ex. F at 201-07; *see also* Pollack Decl., Ex. H at 13).

**B.     The Arrest and Prosecution**

On the evening of July 17, 2008, almost exactly one year after the investigation had begun, the NYPD Vice Enforcement Division executed a search warrant at the home of Plaintiff and Louis Posner. (Pollack Decl., Ex. D at 1). The NYPD arrested Betty Posner there and she was charged later the same day, in a criminal complaint signed by Defendant Sergeant Christopher Koch, with promoting prostitution in the third degree, in violation of New York Penal Law Section 230.25(1); money laundering in the second degree, in violation of New York Penal Law Section 470.15(3); and falsifying business records in the first and second degrees, in violation of New York Penal Law Sections 175.10 and 175.05(3). (Pollack Decl., Ex. H at 1). The NYPD arrested and charged Louis Posner with the same charges. (*Id.*).

Plaintiff was brought to Manhattan Central booking, arraigned on July 19, 2008, and, unable to post bail, incarcerated thereafter. (Posner Aff. ¶¶ 18, 20-21, 24). On July 23, 2008, she was released because the grand jury had not yet indicted her. (*Id.* ¶ 33). On September 4, 2008, however, a second grand jury returned an indictment against both Plaintiff and Louis Posner. (Pollack Decl., Ex. I). The indictment charged Plaintiff with six counts of falsifying

4

business records in the second degree, in violation of New York Penal Law Section 175.05(1). (Pollack Decl., Ex. I at 9-11). It also charged Louis Posner with one count of promoting prostitution in the third degree; six counts of money laundering in the second degree; two counts of falsifying business records in the first degree; and five counts of falsifying business records in the second degree. (*See* Pollack Decl., Ex. I).

On December 10, 2008, Plaintiff filed an omnibus motion in New York State Supreme Court seeking, among other things, to dismiss the indictment on the grounds that the evidence against her was insufficient as a matter of law. (Pollack Decl., Ex. K at 1). She raised three arguments in the motion: (1) that the relevant documents were not business records (*id.* 4-5); (2) that the falsifications were not made for monetary gain (*id.* at 8); and (3) that the alleged misstatements were "innocuous" and immaterial (*id.* at 12). On June 11, 2009, the Honorable Michael Obus, New York State Supreme Court Justice, denied her motion. (Pollack Decl., Ex. L). Based on a review of the "extensive testimony and myriad documents introduced before the Grand Jury," the Court held that there was sufficient evidence to return an indictment against Plaintiff for falsifying business records in the second degree and "that the proceedings were properly conducted." (*Id.* at 2-3 & n.1).

More specifically, Justice Obus concluded that the grand jury had a sufficient basis to determine that the documents at issue were business records because, "in submitting documents which falsely portrayed their companies' own identity, nature and existence, defendants knew that the bank and credit card companies would maintain the documents containing such relevant information to evidence the banks' and processing companies' own activities, and that defendants would thereby cause those companies to maintain false business records." (*Id.* at 8). Second, he determined that the evidence was sufficient to find that the banks and credit card

5

companies were "cheated" of "their right to decline to transact business with [Plaintiff and Louis Posner]," which is all the law required. (*Id.* at 8-12). And third, he found that the evidence supported a conclusion that the misstatements were material because "the statements at issue had misled the banks and credit card companies to engage in transactions with defendants." (*Id.* at 9). Representatives of those companies, Justice Obus noted, had testified "that they would never have transacted business with defendant's entities had they known that those entities did not presently exist" and that knowing the business of clients' companies was important to credit card companies "because they sought to avoid those whose criminal or other behavior posed a risk that the processing companies would be abandoned with unpaid charges." (*Id.* at 12-13).

On March 23, 2010, Louis Posner pleaded guilty to promoting prostitution in the third degree. (Gould Aff. (Docket No. 48) ¶¶ 42, 48; Pollack Decl., Ex. J). (Plaintiff impugns the validity of Louis Posner's plea (*see, e.g.*, Gould Aff.), but there is no reason to address the issue here.) On April 22, 2010, the D.A.'s Office dismissed the charges against Plaintiff (Posner Decl, Ex. B), and the State Court sentenced Louis Posner to probation for five years. (Passeser Decl., Ex. Q at 4)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the

absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).  To defeat a motion for summary judgment, however, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible."  *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

## DISCUSSION

As noted, Defendants move for summary judgment on all of Plaintiff's claims.  The Court will address the false arrest and false imprisonment claims first, then turn to the claims for malicious prosecution and malicious abuse of process, before concluding with the failure-to-intervene and municipal liability claims.

A.     **False Arrest and False Imprisonment**

First, Defendants challenge Plaintiff's false arrest and false imprisonment claims on the grounds that there was probable cause to believe that she had falsified business records, the charge on which she was later indicted.  (Defs.' Mem. Law Supp. Mot. Summ. J. ("Defs.' Mem. Law") (Docket No. 38) 3-14; Pollack Decl., Ex. I at 9-11).  To prevail on a claim of false arrest or false imprisonment, a plaintiff must establish that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003).  Probable cause to arrest is "an absolute defense to a false arrest claim."  *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006); *accord Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013).  Moreover, a police officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."  *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).  That is, a false arrest claim turns on whether there was probable cause as to *some* offense, and "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest."  *Jaegly*, 439 F.3d at 152; *accord Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007).

As a general matter, "probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Gonzalez*, 728 F.3d at 155 (emphasis omitted) (internal quotation marks omitted).  The inquiry is limited to "whether the facts known by the arresting officer at the time

8

of the arrest objectively provided probable cause to arrest." *Jaegly*, 439 F.3d at 153.[1] Although "an officer need not have concrete proof of each element of a crime to establish probable cause for an arrest, probable cause means more than bare suspicion." *Gonzalez*, 728 F.3d at 155 (internal quotation marks and citations omitted). And, as the Second Circuit has emphasized, "it certainly means more than suspicion of some generalized misconduct: no probable cause exists to arrest where a suspect's actions are too ambiguous to raise more than a generalized suspicion of involvement in criminal activity." *Id.* (internal quotation marks omitted).

Applying those standards here, the Court easily finds that, at the time of Plaintiff's arrest, there was probable cause to arrest her for falsifying business records.[2] Under New York law, a person is guilty of falsifying business records in the second degree when he or she, "with intent to defraud, . . . omits to make a true entry in the business records of an enterprise in violation of a duty to do so which he knows to be imposed upon him by law or by the nature of his position . . . ." N.Y. Penal Law § 175.05(3). As Justice Obus concluded in holding that the evidence before the grand jury was sufficient to support Plaintiff's indictment for that offense,

---

[1] As Defendants correctly note (Defs.' Mem. Law 10-13), the Court's "assessment as to whether probable cause existed at the time of the arrest is to be made on the basis of the collective knowledge of the police, rather than on that of the arresting officer alone." *Husbands ex rel. Forde v. City of N.Y.*, 335 F. App'x 124, 127 (2d Cir. 2009) (summary order) (citing *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)); *see also Calamia v. City of N.Y.*, 879 F.2d 1025, 1032-33 (2d Cir. 1989) (applying the "collective knowledge doctrine" to an Assistant District Attorney who participated in the investigation). Plaintiff does not argue otherwise.

[2] The parties disagree about whether Plaintiff's later indictment for falsifying business records creates a presumption of probable cause for purposes of her false arrest and false imprisonment claims. (*Compare* Defs.' Mem. Law 5-6 (citing *Walker v. Sankhi*, 494 Fed. App'x 140, 142-43 (2d Cir. 2012) (summary order); *Manganiello v. City of New York*, 612 F.3d 149, 162 (2d Cir. 2010)), *with* Pl.'s Mem. Law 5 (citing *McClellan v. Smith*, 439 F.3d 137, 145 (2d. Cir. 2005); *Savino*, 331 F.3d at 75; *Cook v. Sheldon*, 41 F.3d 73, 77-79 (2d Cir. 1994))). The Court need not resolve the issue, however, as there was probable cause to arrest her independent of any presumption that the grand jury's indictment may have created.

there was a "sufficient basis" to believe that Plaintiff and her husband submitted documents to banks and credit card processors that "falsely portrayed their companies' own identity, nature and existence" and that they "knew that the bank and credit card companies would maintain the documents . . . thereby caus[ing] those companies to maintain false business records." (Pollack Decl., Ex. L at 8).[3] Further, a reasonable officer could certainly have concluded that, had the banks and credit card companies "known of the true nature and condition of [the relevant] business entities — *i.e.*, whether those business presently existed, and whether they provided lap dances and prostitutes in addition to a buffet — they would not have conducted business with those entities." (*Id.* at 9).[4]

Based on the totality of circumstances, officers also had reason to believe that Plaintiff acted with intent to defraud. In fact, a reasonable officer aware of HLDC's activities could have inferred from the nature of the false information itself that Plaintiff and her husband intended to deceive the banks and credit card companies into believing that the relevant entities were properly incorporated and involved in innocuous activities. Despite Plaintiff's assertion to the contrary (Pl.'s Mem. Law Opp'n Defs.' Mot. Summ. J. ("Pl.'s Mem. Law") (Docket No. 49) 10),

---

[3] Justice Obus's decision does not have preclusive effect with respect to Plaintiff's false arrest and false imprisonment claims. First, the precise question of whether there was probable cause at the time of arrest was not "actually litigated" in the state court proceeding. *See, e.g.*, *Katz v. Katz*, 312 F.3d 568, 573-74 (2d Cir. 2002). Second, Plaintiff did not have an opportunity to appeal Justice Obus's decision because the charges against her were eventually dismissed. *See, e.g.*, *Johnson v. Watkins*, 101 F.3d 792, 793 (2d Cir. 1996). Nevertheless, Justice Obus's reasoning is helpful in analyzing the issue presented here.

[4] As Justice Obus noted, representatives of the credit card processing companies testified that "they strove to accurately assess the business of their client companies, because they sought to avoid those whose criminal or other behavior posed a risk that the processing companies would be abandoned with unpaid charges." (Pollack Decl., Ex. L at 12-13). Even in the absence of testimony on that point, an officer could reasonably have believed that the false information in the documents discussed above would have been important to the banks and credit card companies.

even the false statement that Voter March was a for-profit entity rather than a non-profit entity could have been understood as motivated by an intent to defraud. As Justice Obus explained, one could reasonably "conclude that the misdescription was necessary to explain to [the bank] why such large amounts of money flowed through the coffers of an otherwise dormant, political-action or public-interest styled corporation." (Pollack Decl., Ex. L at 13 n.3).[5] Furthermore, as noted, an analyst who specialized in investigating prostitution businesses and money laundering schemes found more than $260,000 in unexplained transfers "in a pattern of evincing an intent to 'structure' the transfers to avoid federal currency transaction reporting laws." (Pollack Decl., Ex. H at 13; *see also* Pollack Decl., Ex. F at 205). That evidence — particularly in the context of the broader investigation into the illegal activities of, and taking place at, HLDC — was sufficient to give a reasonable officer probable cause to believe that Plaintiff was falsifying business records with an intent to defraud. *See, e.g.*, *Hall v. Brown*, 489 F. Supp. 2d 166, 173-174 (N.D.N.Y. 2007) (finding, on summary judgment, that there was probable cause to arrest Plaintiff for falsifying business records based on the investigators' study of Plaintiff's business records and behavior that matched allegations).

        Plaintiff's arguments to the contrary are unavailing. Many — if not most — of Plaintiff's arguments rely on facts that were not known to Defendants at the time of her arrest or on alternative explanations for the facts that were known at the time. For instance, Plaintiff asserts

---

[5] Plaintiff's assertion that Voter March's certificate of incorporation identifying it as a non-profit corporation was attached to the bank document — an assertion the Court credits for purposes of this motion — does make the issue a closer one. (Pl.'s Mem. Law. 10). But Plaintiff has introduced no evidence suggesting that Defendants knew that the certificate of incorporation was attached to the bank document. And, given the totality of the circumstances known to Defendants, a reasonable officer could still have believed that the false statement on the document itself was part of a fraud scheme. That Plaintiff might have had a strong argument at trial, or that the fraud scheme was bound to fail, does not change that.

that her husband did not know that Web Access had been dissolved (Pl.'s Mem. Law 6), and that "[e]very bank application or signature card and every merchant credit application was completed by [her] husband . . . and [her] involvement, if any, was in signing a few documents at his request" (Posner Aff. ¶ 50). Further, she insists that it is "common practice for gentlemen's clubs to list their business type as something other than a gentlemen's club or strip club" to protect the privacy of their employees, many of whom "are professional white collar workers by day." (Pl.'s Mem. Law 12-13). The fact that Plaintiff has innocent explanations for the information that was known to Defendants, however, does not mean that they lacked probable cause; it merely means that she might have had viable arguments and defenses to the charges at trial. *See, e.g.*, *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

Plaintiff's other arguments are similarly unpersuasive. First, she contends that any charges relating to the September 2005 bank document submitted for Web Access were time barred under New York law. (Pl.'s Mem Law 9 (citing N.Y. Crim. Proc. Law § 30.12(c))). That may be true, but Defendants were nevertheless entitled to consider the conduct in evaluating whether there was probable cause as to the other documents at issue. *Cf., e.g.*, *United States v. DeFiore*, 720 F.2d 757, 764 (2d Cir. 1983) (holding that evidence establishing "intent, as well as the preparations and plans that went into the scheme to defraud" were admissible against the defendant under Rule 404(b) of the Federal Rules of Evidence, "even though it antedate[d] the limitations period").

Finally, Plaintiff contends that it was not false to identify Web Access as a corporation — and, conversely, that it *was* false of Sergeant Koch to suggest otherwise in the criminal

12

complaint against her — because it was "still permitted to conduct business as a de facto corporation in New York State." (Pl.'s Mem. Law 7). It is true that, under New York law, "a company lacking formal corporate status but nonetheless operating as a corporation may be considered a de facto corporation and those who treat the entity as a corporation in regular business dealings may not later deny its corporate status." *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 87 (2d Cir. 1999) (per curiam). But more recent authority than that on which Plaintiff relies in her memorandum of law indicates that the doctrine is inapplicable where, as here, a corporation was dissolved for failure to pay franchise taxes. *See, e.g.*, *Conte v. Cnty. of Nassau*, No. 06-CV-4746 (JFB) (ETB), 2013 WL 3878738, at *24 n.36 (E.D.N.Y. July 26, 2013) (citing cases). Further, the doctrine applies only in the absence of fraud. *See, e.g.*, *Lodato v. Greyhawk N. Am., L.L.C.*, 807 N.Y.S.2d 818, 824 (N.Y. Sup. Ct. 2005) (citing cases). Regardless, the *de facto* corporation doctrine is a doctrine of estoppel; it does not follow that one who represents an entity as a valid corporation when it has actually been dissolved as matter of law is making a truthful statement. And it *certainly* does not follow that Sergeant Koch's statement in the criminal complaint that Web Access had been dissolved and no longer existed "was a false, misleading, and an incomplete description of the corporation." (Pl.'s Mem. Law 7).

In short, based on the undisputed evidence in the record, the Court finds that Defendants had probable cause to arrest Plaintiff for falsifying business records in the second degree.[6] As

---

[6] Defendants would be entitled to summary judgment on Plaintiff's false arrest and false imprisonment claims even if the evidence known to Defendants prior to Plaintiff's arrest fell short of creating probable cause. That is because there was, at a minimum, "arguable probable cause to arrest." *See, e.g.*, *Hart v. City of New York*, No. 11 Civ. 4678 (RA), 2013 WL 6139648, at *7 (S.D.N.Y. Nov. 18, 2013) ("In the false arrest context, 'an arresting officer is entitled to qualified immunity . . . if he can establish that there was arguable probable cause to arrest. Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on

that is a complete defense to Plaintiff's claims of false arrest and false imprisonment, Defendants are entitled to summary judgment on those claims, and the Court need not reach the question of whether Defendants also had probable cause to arrest Plaintiff for promoting prostitution or money laundering. *See, e.g.*, *Jaegly*, 439 F.3d at 152; *Zellner*, 494 F.3d at 369.

**B.      Malicious Prosecution and Malicious Abuse of Process**

Next, Defendants challenge Plaintiff's claims for malicious prosecution and malicious abuse of process. (Defs.' Mem. Law 14-17, 21-22). To succeed on a claim of malicious prosecution, a plaintiff must demonstrate: "(1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." *Savino*, 331 F.3d at 75. The existence of probable cause as to one offense does not defeat a malicious-prosecution claim as to another offense. *See, e.g.*, *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991) ("[W]here the issue is whether the officers had probable cause to commence proceedings against [Plaintiff], not with whether the charges were terminated in plaintiff's favor, [there is a] need to separately analyze the charges claimed to have been maliciously prosecuted."). A malicious-abuse-of-process claim, on the other hand, "lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). Courts in this Circuit appear to be divided on whether the existence of probable cause defeats a claim for malicious abuse of process. *Compare, e.g.*, *Mangino v. Inc. Vill. of Patchogue*, 814 F. Supp. 2d 242, 248 (E.D.N.Y. 2011) ("[I]f plaintiff can demonstrate the elements of abuse of process . . .

---

whether the probable cause test was met.'" (quoting *Ackerson v. City of White Plains*, 702 F.3d 15, 21 (2d Cir. 2012) (per curiam) (alterations omitted) (citation omitted))).

without relying on an inference from a lack of probable cause, then [a malicious-abuse-of-process] claim can survive even with probable cause."), *with Widget v. Town of Poughkeepsie*, No. 12 Civ. 3459 (ER), 2013 WL 1104273, at *13 (S.D.N.Y. Mar. 18, 2013) (holding that probable cause is a defense not only to a malicious prosecution claim, but also to a malicious abuse of process claim).

In this case, both sets of claims fail for the same reason: Plaintiff has pointed to no admissible evidence whatsoever of malice or intent to do harm without excuse or justification. Plaintiff asserts that Defendants "willfully provided false information in the criminal court complaint." (Pl.'s Mem. 19).[7] But there is little or no evidence of falsity (as discussed above, most of the information that Plaintiff identifies as "false" depends on facts that were not known to Defendants at the time or alternative explanations that Defendants were not required to credit), and no evidence whatsoever of willfulness. Plaintiff does insist that the charges against her were brought solely to pressure her husband into pleading guilty because Defendants "had a very weak case against [him]" (Pl.'s Mem. 24); that her arrest was "politically motivated" because her arrests were "fodder for the conservative media" (Posner Aff. ¶ 96 (citing a post about Louis Posner written by Ann Coulter on her personal blog)); and that Defendants' goal was "to

---

[7] Plaintiff's malicious prosecution claim with respect to the falsifying business records charges fails for two other reasons. First, as discussed above, Defendants had probable cause to arrest Plaintiff for falsifying business records, and no facts were discovered between the time of arrest and the time of charging that made apparent "'the groundless nature of the charges.'" *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996); *see also Stansbury v. Wertman*, 721 F.3d 84, 94-95 (2d Cir. 2013) ("[T]he existence of probable cause is a complete defense to a claim of malicious prosecution." (internal quotation marks omitted)). Second, Plaintiff's indictment by the grand jury creates a presumption of probable cause with respect to falsifying business records, and she has not rebutted the presumption with "evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Stansbury*, 721 F.3d at 95 (internal quotation marks omitted).

embarrass and humiliate plaintiff." (Pl.'s Mem. 24). Plaintiff, however, has no evidence to support any of those claims beyond her own speculation, which is insufficient to avoid summary judgment. *See, e.g.*, *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.").[8] Plaintiff also claims that her prosecution was brought in retaliation for her husband's refusal to pay a bribe to members of the NYPD Vice Squad. (Pl.'s Mem. Law 24). But that claim is premised on inadmissible double hearsay — namely, an affidavit recounting Louis Posner's statement to the affiant that he had been advised by two members of the security staff about the alleged bribe attempt. (Aslan Decl. (Docket No. 47) ¶¶ 82-93, 97). Regardless, even if Louis Posner did refuse to pay a bribe, Plaintiff cites no evidence tying the prosecution of her to that refusal.

In sum, there is no admissible evidence to support Plaintiff's conclusory assertions that Defendants acted with malice and or intent to do harm without excuse or justification. Accordingly, her claims of malicious prosecution and malicious abuse of process fail as a matter of law and must be dismissed.

## D.   Failure To Intervene and Municipal Liability

Finally, Defendants seek dismissal of Plaintiff's failure-to-intervene and municipal liability claims. (Defs.' Mem. Law 20, 22-25). Because Defendants are entitled to summary judgment on Plaintiff's primary claims that they violated her constitutional rights, it follows that

---

[8]   The NYPD Case Synopsis, prepared nine days before the arrest, does mention the possibility of media coverage, but wholly unrelated to Louis Posner. The Case Synopsis predicted media coverage because "[t]here ha[d] been previous media coverage involving a patron who was injured when a stripper struck him in the eye with a high heeled shoe . . . . [and had] threatened litigation against the owner/operator." (Pollack Decl., Ex. B at 3).

they are entitled to summary judgment on her failure-to-intervene and municipal liability claims as well. *See, e.g.*, *Matthews v. City of New York*, 889 F. Supp. 2d 418, 443-44 (E.D.N.Y. 2012) (noting that failure to intervene claims are "contingent upon the disposition of the primary claims underling the failure to intervene claim"); *Harper v. City of New York*, No. 10 Civ. 7856 (SAS), 2011 WL 3463156, at *8 (S.D.N.Y. Aug. 5, 2011) ("Because plaintiff's *Monell* claim is contingent on the existence of an independent constitutional violation, and this Court has dismissed all of plaintiffs' claims for violations of their constitutional rights, the claims against the City cannot be sustained."). Furthermore, even if there were evidence to support Plaintiff's primary claims, she has adduced no evidence that the violation or violations of her constitutional rights resulted from a municipal policy, custom, or practice, as required to hold the City liable. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). She does not, for example, "provide any expert testimony, training manuals, or individual evidence relating to an absence of training in [money laundering and prostitution]." *Brown v. Cnty. of San Joaquin*, No. CIV. S-04-2008 FCD PAN, 2006 WL 1652407, 12 (E.D. Cal. June 13, 2006). Instead, she relies solely on the passing testimony of several Defendants that they did not receive specific training from the NYPD on the elements of money laundering or prostitution. (Hazan Decl. (Docket No. 45) ¶ 14; Hazan Decl., Exs. 9, 10, 11). But the evidence (including that same testimony) makes clear that there is some training on these issues. (Hazan Decl., Ex. 10, at 64; Hazan Decl. Ex. 11, at 35). Moreover, the testimony does not suffice to "create a triable issue of fact in regards to [a] *Monell* claim based upon a failure to train." *Brown*, 2006 WL 1652407, at *12 (citing *Ramirez v. Cnty. of Los Angeles*, 397 F. Supp. 2d 1208, 1228 (C.D. Cal. 2005)).

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED, and the Complaint is dismissed in its entirety. The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: January 16, 2014
      New York, New York

                                         JESSE M. FURMAN
                                         United States District Judge